UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


KEVIN KING,

    Plaintiff,

v.                                                                                           Case No. 2:07-cv-133
                                                        HON. GORDON J. QUIST
JERI-ANN SHERRY, et al.,

    Defendants.
_____/


## REPORT AND RECOMMENDATION

Plaintiff Kevin King filed this civil rights action pursuant to 42 U.S.C. § 1983 against defendants Chippewa Correctional Facility Warden Jeri-Ann Sherry, Deputy Warden John Boynton, and RUM D. Mansfield. Plaintiff was transferred to the Chippewa Correctional Facility on January 19, 2007. Plaintiff alleges that upon transfer, he requested a non-smoking placement. Instead, he was placed in a housing unit where prisoners smoke every day, subjecting plaintiff to Environmental Tobacco Smoke (ETS). Plaintiff was issued a Special Accommodation Notice for smoke-free housing because of his serious medical need to be free from ETS exposure. Plaintiff asserts that he has never been moved to a smoke-free environment despite defendants' awareness that prisoners smoke in the housing unit. Plaintiff has asserted that the guards simply write prisoners misconduct tickets for smoking and that there are a number of repeat offenders in his housing unit. Plaintiff moves for equitable relief and damages. A hearing was held before the undersigned on July 24, 2008, and continued on August 11, 2008.

Plaintiff has more recently transferred to the Brooks Correctional Facility (LRF). Plaintiff asserts that he still is not being housed in a smoke-free environment. Plaintiff has filed an amended complaint adding defendants MDOC Director Patricia Caruso, LRF Warden Mary Berghuis, and LRF Deputy Warden Rick Smith. The MDOC has asserted that starting February 1, 2009, smoking will be prohibited on all MDOC property and tobacco products will no longer be sold to prisoners.

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987). In exercising that discretion, the court must consider and balance four factors:

> 1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.
>
> 2. Whether the movant has shown irreparable injury.
>
> 3. Whether the preliminary injunction could harm third parties.
>
> 4. Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994). These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers. *Id.*

Moreover, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984). *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979). It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under

the circumstances. *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999 (1969). *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action. *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989). Testifying at the hearing for injunctive relief was plaintiff Kevin King. According to plaintiff, in April of 2005 he suffered a stroke and was hospitalized for two months. Plaintiff believes he is at risk for cardiac problems and that this is recognized by MDOC officials. Plaintiff maintains that exposure to ETS causes him to suffer increased dizziness. Plaintiff is currently housed in the A-Wing of Allegan Unit at LRF. The A-Wing is designated tobacco-free. The testimony of plaintiff, as well as the testimony of all the witnesses, establishes that the MDOC has adopted a policy prohibiting smoking inside all buildings. Prisoners are permitted to possess tobacco, which they are allowed to smoke in designated areas outside the buildings. According to plaintiff's testimony, prisoners violate the rule prohibiting smoking in the buildings and are often found smoking in bathrooms, their cells, or common areas. Plaintiff has requested placement in a tobacco-free and smoke-free environment and has, according to his testimony, been placed with smokers on more than one occasion. Plaintiff has registered several complaints regarding his exposure to ETS, including sending letters to MDOC officials and filing grievances. *See* plaintiff's exhibits 3-11. MDOC policy clearly prohibits smoking in the areas where plaintiff has been housed. *See* plaintiff's exhibits 12-14. In addition, the MDOC has adopted a policy to become smoke-free and tobacco-free beginning February 1, 2009. *See* plaintiff's exhibit 15.

Plaintiff's medical records do not support a claim that plaintiff be placed in a smoke-free environment. Diane Martin, a corrections officer at LRF who works in the Allegan Unit,

testified that she has caught prisoners violating the no smoking rule and has issued them minor misconducts. Bruce Moilanen, an inmate at LRF, testified that prisoners violate the rules regarding smoking at the facility. Larry Mattingly, an inmate at LRF, testified that he is a smoker and that he violates the rules regarding smoking in the buildings on a frequent basis. In addition, Mattingly testified that prisoners will often smoke in the bathroom and have a "jigger" stand guard at the bathroom door to notify the individuals smoking in the bathroom when a guard is coming. Rick Smith, Deputy Warden at LRF, testified regarding the policy of the MDOC prohibiting smoking in all buildings. In addition, Deputy Warden Smith testified to the efforts made by the MDOC to place inmates in tobacco-free units who have made that request. Deputy Warden Smith testified that he performs rounds in the Allegan Unit at LRF and issues minor misconducts for prisoners found smoking in the buildings. If a prisoner is caught smoking in a tobacco-free unit, that prisoner is typically transferred to another unit within 24 hours of being found guilty of the misconduct. Deputy Warden Smith also testified that employees are not permitted to smoke inside MDOC buildings. If an employee is caught smoking, that employee is subjected to disciplinary proceedings. According to Deputy Warden Smith, MDOC employees are required to write misconducts on inmates found violating the no smoking rules. Deputy Warden Smith has written 50-100 misconducts for inmates found smoking. The testimony of Deputy Warden Smith establishes that when presented with complaints by plaintiff King regarding his exposure to ETS, he responded promptly and in an appropriate manner. In addition, Deputy Warden Smith contacted the Lakeland Correctional Facility, where there is a tobacco-free unit, and was informed that there was a lengthy waiting list. Deputy Warden Smith testified that prisoners are a difficult population to manage and that it is very difficult to eliminate all tobacco use. Accordingly, the MDOC has adopted a staggered method to

eliminate all tobacco use in prisons with the goal of eliminating all smoking and tobacco use by February 1, 2009.

Roger Smead, a resident unit manager in the Allegan Unit, testified that smoking is not permitted in that unit and is only permitted outside in certain designated areas of the "yard." Tom Vogel testified that he conducted inspections of the indoor air quality at the Allegan Unit at LRF and found that it was in compliance with standards for air quality. Vogel did not test for ETS, but tested the ventilation system and found that the system met appropriate standards. In addition, Vogel testified that the ventilation system does not recirculate air. The system brings in outside air which is run through six to eight filters.

Plaintiff claims that he had a stroke and should not be subjected to ETS. Plaintiff is currently housed in a smoke-free area where other prisoners have requested to be free from ETS. Defendants have asserted that plaintiff has not shown any medical need to be free from exposure to ETS. Furthermore, plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief. The medical evidence of record does not support plaintiff's claim.

Plaintiff has also failed to establish a substantial likelihood of success on the merits. In fact, the testimony received at the hearing and the documents offered into evidence establish that the MDOC and the named defendants have made a good faith effort to limit the exposure of plaintiff to ETS. Furthermore, the MDOC has implemented a policy to eliminate all smoking in MDOC facilities by February 1, 2009. As the testimony indicated, prisoners are a difficult population to manage. All prisoners have one thing in common, they have a conviction for an inability to follow one or more of society's rules. Upon being incarcerated, it is apparent that many inmates violate the rules established by the MDOC. This includes inmates who continue to violate the no smoking rules of the institutions at which they are housed. The evidence establishes that MDOC officials,

particularly the defendants in this case, have taken appropriate steps to eliminate plaintiff's exposure to ETS. The evidence of record does not establish that these defendants have been deliberately indifferent to plaintiff's complaints. In fact, the evidence suggests the exact opposite. Defendants have taken aggressive steps in an effort to eliminate the exposure of all prisoners to ETS.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction. Any interference by the federal courts in the administration of state prison matters is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988). That showing has not been made here.

Because plaintiff has failed to meet the heavy burden establishing the need for injunctive relief, I recommend that plaintiff's motion for a temporary restraining order (Docket #9) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of your receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR. 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal of those issues or claims addressed or resolved as a result of the Report and Recommendation. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
        TIMOTHY P. GREELEY
        UNITED STATES MAGISTRATE JUDGE

Dated: August 18, 2008