UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEVIN KING,

    Plaintiff,

v.                                                                       Case No. 2:07-cv-133
                                                                     HON. GORDON J. QUIST
JERI-ANN SHERRY, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Kevin King filed this prisoner 42 U.S.C. § 1983 action against defendants Chippewa Correctional Facility Warden Jeri-Ann Sherry, Deputy Warden John Boynton, RUM D. Mansfield, Patricia Caruso, Mary Berghuis and Rick Smith. Plaintiff was transferred to the Chippewa Correctional Facility on January 19, 2007.[1] Plaintiff alleges that upon his transfer, he requested a non-smoking placement. Instead, he was placed in a housing unit where prisoners smoke every day, subjecting plaintiff to Environmental Tobacco Smoke (ETS). Plaintiff was issued a Special Accommodation Notice for smoke free housing because of his serious medical need to be free from ETS exposure. Plaintiff asserts that he has never been moved to a smoke free environment despite defendants' awareness that prisoners smoke in the housing unit. Plaintiff has asserted that the guards simply write prisoners misconduct tickets for smoking and that there are a number of repeat offenders in plaintiff's housing unit.

---

[1] Plaintiff is currently confined at the Brooks Correctional Facility.

Defendants previously filed a motion for summary judgment and plaintiff filed a motion for injunctive relief. Defendants' motion was denied initially because defendants simply ignored the allegations in plaintiff complaint in their motion. A comprehensive hearing was held on plaintiff's motion for a preliminary injunction. Plaintiff testified at the hearing that he had suffered a stroke and was hospitalized for two months and was at risk for cardiac problems. Plaintiff complained that ETS exposure caused him increased dizziness. At the time of the hearing, plaintiff was housed in the smoke free A-Wing of the Chippewa Correctional Facility. Smoking was prohibited on the inside of all MDOC buildings at that time. Plaintiff complained that he was still subjected to ETS by prisoners' use of tobacco products in violation of MDOC rules. As of February 1, 2009, all tobacco use is prohibited at the MDOC prison facilities. After the hearing, the court concluded that plaintiff failed to establish that defendants were deliberately indifferent to plaintiff's need for a smoke free environment, and plaintiff did not show an immediate need for injunctive relief. In my Report and Recommendation to deny plaintiff's motion for equitable relief, I wrote:

> Diane Martin, a corrections officer at LRF who works in the Allegan Unit, testified that she has caught prisoners violating the no smoking rule and has issued them minor misconducts. Bruce Moilanen, an inmate at LRF, testified that prisoners violate the rules regarding smoking at the facility. Larry Mattingly, an inmate at LRF, testified that he is a smoker and that he violates the rules regarding smoking in the buildings on a frequent basis. In addition, Mattingly testified that prisoners will often smoke in the bathroom and have a "jigger" stand guard at the bathroom door to notify the individuals smoking in the bathroom when a guard is coming. Rick Smith, Deputy Warden at LRF, testified regarding the policy of the MDOC prohibiting smoking in all buildings. In addition, Deputy Warden Smith testified to the efforts made by the MDOC to place inmates in tobacco-free units who have made that request. Deputy Warden Smith testified that he performs rounds in the Allegan Unit at LRF and issues minor

misconducts for prisoners found smoking in the buildings. If a prisoner is caught smoking in a tobacco-free unit, that prisoner is typically transferred to another unit within 24 hours of being found guilty of the misconduct. Deputy Warden Smith also testified that employees are not permitted to smoke inside MDOC buildings. If an employee is caught smoking, that employee is subjected to disciplinary proceedings. According to Deputy Warden Smith, MDOC employees are required to write misconducts on inmates found violating the no smoking rules. Deputy Warden Smith has written 50-100 misconducts for inmates found smoking. The testimony of Deputy Warden Smith establishes that when presented with complaints by plaintiff King regarding his exposure to ETS, he responded promptly and in an appropriate manner. In addition, Deputy Warden Smith contacted the Lakeland Correctional Facility, where there is a tobacco-free unit, and was informed that there was a lengthy waiting list. Deputy Warden Smith testified that prisoners are a difficult population to manage and that it is very difficult to eliminate all tobacco use. Accordingly, the MDOC has adopted a staggered method to eliminate all tobacco use in prisons with the goal of eliminating all smoking and tobacco use by February 1, 2009.

Roger Smead, a resident unit manager in the Allegan Unit, testified that smoking is not permitted in that unit and is only permitted outside in certain designated areas of the "yard." Tom Vogel testified that he conducted inspections of the indoor air quality at the Allegan Unit at LRF and found that it was in compliance with standards for air quality. Vogel did not test for ETS, but tested the ventilation system and found that the system met appropriate standards. In addition, Vogel testified that the ventilation system does not recirculate air. The system brings in outside air which is run through six to eight filters.

Plaintiff claims that he had a stroke and should not be subjected to ETS. Plaintiff is currently housed in a smoke-free area where other prisoners have requested to be free from ETS. Defendants have asserted that plaintiff has not shown any medical need to be free from exposure to ETS. Furthermore, plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief. The medical evidence of record does not support plaintiff's claim.

Defendants move for summary judgment, arguing that plaintiff cannot show that he has a serious medical need to be completely free from all exposure to ETS, and that plaintiff cannot show that defendants were deliberately indifferent to his need for a smoke free environment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

When prison officials ignore a prisoner's serious medical condition such as allergy or asthma relating to second-hand smoke and do not make a good-faith effort to enforce non-smoking policies or to segregate a prisoner from exposure to smoke, a prisoner may state an Eighth Amendment claim based upon exposure to environmental tobacco smoke. *See Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005)(citing *Hunt v. Reynolds*, 974 F.2d 734, 726 (6th Cir. 1992)).

Plaintiff alleges an Eighth Amendment claim against defendants based on his exposure to high levels of ETS during his stay in a tobacco free housing unit. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment also obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). A prison official violates the Eighth Amendment when he or she is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

*Helling v. McKinney,* 509 U.S. 25 (1993) is the seminal Supreme Court case in this area. In *Helling*, a prisoner initiated a § 1983 action against prison officials claiming that his involuntary exposure to ETS from a cellmate[2] posed an unreasonable risk of serious damage to his future health in violation of the Eighth Amendment. *Helling*, 509 U.S. at 35. The Supreme Court affirmed the decision of the Court of Appeals to remand the case to the district court to allow the prisoner an opportunity to prove his case, which also required the prisoner to prove both the subjective and objective elements necessary for an Eighth Amendment violation. *Id*. Relevant to

---

[2]The cellmate in *Helling* smoked five packs of cigarettes a day. *Helling,* 509 U.S. at 35.

the objective element is whether the prisoner endured unreasonably high exposure to ETS that society would consider violative of contemporary standards of decency. *Id.* at 35-36. Relevant to the subjective element is whether prison officials had exhibited deliberate indifference with regard to the dangers of a prisoner's exposure to ETS. *Id*. at 36.

In the opinion of the undersigned, plaintiff fails to satisfy the objective component for an Eighth Amendment violation. To prove the objective element, plaintiff must first show that he has been exposed to unreasonably high levels of ETS.[3] *Id.* at 35. "More than mere scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will be caused by exposure to ETS" is necessary to establish the objective component. *Id.* at 36. Second, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id.* Plaintiff has alleged that he was exposed to high levels of ETS by prisoners violating the rules while he was housed in a tobacco free housing unit. However, plaintiff has failed to allege any facts quantifying his level of exposure. Plaintiff's conclusory allegations regarding the level of ETS to which he was exposed fail to support the objective component of an Eighth Amendment claim. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000).

---

[3]"Plainly relevant to this determination" was the fact that plaintiff in *Helling* had been moved to a different prison and was "no longer the cellmate of a five-pack-a-day smoker." *Helling,* 509 U.S. at 35. The Supreme Court also observed that the prison had adopted a formal smoking policy restricting smoking to certain areas and where wardens could, contingent on space availability, designate non-smoking areas in dormitory sections. *Id.* at 35-36. The Supreme Court noted that the changed policies could make it impossible for the plaintiff to prove that he would be exposed to an unreasonable risk of ETS with respect to his future health. *Id.* at 36.

The Supreme Court in *Helling* did not mandate smoke free prisons. *Williams v. Howes,* No. 1:05-cv-817, 2007 WL 1032365, at *14 (W.D. Mich. Mar. 30, 2007) (citing *Scott v. Dist. of Columbia*, 139 F.3d 940, 942 (D.C. Cir. 1998) and *Mansoori v. Lappin,* No. 04-3241-JAR, 2007 WL 401290, at *10 (D. Kan. Feb. 1, 2007)). A prisoner's exposure to smoke must cause more than mere discomfort or inconvenience. *Talal v. White,* 403 F.3d 423, 426 (6th Cir. 2005). Plaintiff has not presented any factual evidence suggesting that his exposure to ETS caused him anything beyond discomfort. Nor does he allege any serious medical problems that are related to the ETS exposure such as asthma or allergies, or that the ETS exposure has caused further damage to any of his existing health issues. *See Oliver v. Deen*, 77 F.3d 156, 159-61 (7th Cir. 1996) (an asthmatic inmate's assignment to cells with smoking inmates for 133 days resulting in ETS exposure which aggravated the plaintiff's asthma and necessitated his increased use of an inhaler failed to satisfy the objective component); *Williams,* 2007 WL 1032365, at *15 (asthmatic inmate's exposure to ETS during a seven-month period failed to satisfy the objective component).

It is also obvious from the case law in this area that the risk of which plaintiff complains *is* one that today's society chooses to tolerate. *See Griffin v. DeRosa*, 153 F. App'x 851, 853 (3d Cir. 2005) (a prisoner's allegation that he had been exposed to ETS in inadequately ventilated restrooms over twenty months failed to show that the prisoner was exposed to unreasonably high levels of ETS contrary to contemporary standards of decency); *Hankins v. Bethea*, No. CIVA 0:05-3334 DCNBM, 2007 WL 172509, at *6 (D.S.C. Jan. 18, 2007) ("[e]xposure to moderate levels of cigarette smoke is a common fact of contemporary life, and [p]laintiff has failed to present evidence to show that the amount of ETS he was exposed to during the relatively short [5-month] period of time set forth in his [c]omplaint was at such an unreasonably high level that it

violated contemporary standards of decency"); *Colon v. Sawyer*, No. 9:03-CV-1018 LEK/DEP, 2006 WL 721763, at *9 (N.D.N.Y. Mar. 20, 2006) (asthmatic plaintiff's claim that "he [was] housed in a dormitory unit where smoking [was] permitted, and that he [was] subjected to ETS near the dining hall entrance and exit, as well as his speculation that such circumstances 'may result in catastrophic harm to [him],' . . ., simply [did] not describe conditions that rise to a level which today's society chooses not to tolerate"); *see also Conyers v. Mich. Dep't of Corr.*, No. 5:06-cv-100, 2006 WL 2644990, at *6 (W.D. Mich. Sept. 14, 2006). Therefore, in the opinion of the undersigned, the factual evidence in the record fails to satisfy the objective element for an Eighth Amendment claim.

Similarly, plaintiff further fails to meet the subjective element of the *Helling* test, i.e., that defendants were deliberately indifferent to his exposure to unreasonably high levels of ETS. Plaintiff was placed in a tobacco free unit and each of the defendants have shown that they addressed plaintiff's request for a smoke free unit and did not simply ignore his requests. In addition, prison officials had appropriate policies in place. Policy Directive 01.03.140 states that smoking is prohibited in prisoner housing units. *See* MICH. DEP'T OF CORR., Policy Directive 01.03.140, ¶ B. The adoption of the MDOC's no smoking policy and the prison officials' current attitude and conduct, which reflect a "zero tolerance" for smoking in the housing units, bears heavily on the deliberate indifference inquiry.[4] *Helling*, 509 U.S. at 36. Plaintiff complains that defendants did not adequately enforce the smoking policy. It is well established that imperfect enforcement of a non-smoking policy does not rise to the level of deliberate indifference. *Talal*, 403 F.3d at 427; *Wilson*

---

[4]The Court notes that the Michigan Department of Corrections (MDOC) recently updated Policy Directive 01.03.140 on February 1, 2009. The new policy prohibits smoking by offenders and MDOC employees inside all MDOC buildings and within 100 feet of any entrance to those buildings. MICH. DEP'T. OF CORR., Policy Directive, ¶ G (effective Feb. 1, 2009).

*v. Hofbauer*, 113 F. App'x 651, 652 (6th Cir. 2004) (imperfect enforcement of MDOC Policy Directive 01.03.140, which prohibited smoking in all occupied buildings, including housing units, "show[ed], at most, negligence by the defendants, rather than deliberate indifference"); *Moorer v. Price*, 83 F. App'x 770, 773 (6th Cir. 2003) (imperfect enforcement of MDOC Policy Directive 01.03.140 does not equate to deliberate indifference).

In summary, in the opinion of the undersigned, plaintiff has failed to sustain his burden of proof in response to defendants' motion for summary judgment. Accordingly, it is recommended that defendant's motion summary judgment (Docket #95) be granted and this case be dismissed in its entirety. It is further recommended that plaintiff's motion to amend his ex parte motion for writs of habeas corpus ad testificandum (Docket #113) be denied as moot.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: February 16, 2010