UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEVIN KING,

    Plaintiff,

v.                                                       Case No. 2:07-cv-133
                                                        HON. GORDON J. QUIST

PATRICIA CARUSO, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Kevin King, an inmate currently confined at the Brooks Correctional Facility in Muskegon Heights, Michigan, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). The remaining defendants include MDOC Director Patricia Caruso, Warden Mary Berghuis, and Deputy Warden Rick Smith. Trial is scheduled for September 27, 2011.

Plaintiff alleges that while housed at the Chippewa Correctional Facility he was subjected to unwanted environmental tobacco smoke (ETS). Plaintiff transferred from the Chippewa Correctional Facility to the Brooks Correctional Facility on December 5, 2007. Plaintiff claims that he was subjected to ETS in these facilities, despite receiving a medical special accommodation to be free from ETS. Tobacco was banned by the MDOC in all facilities on February 1, 2009. Plaintiff was deposed on May 27, 2011. Plaintiff testified that he had filed three grievances against defendant Caruso and spoke to defendant Caruso about his ETS exposure on one occasion. Plaintiff testified that his wife had exchanged emails with defendant Caruso. Plaintiff claims that he suffered with multiple medical issues as a result of his unnecessary exposure to ETS in the prison.

Presently before the Court is defendants' motion for summary judgment. Defendant Caruso moves for dismissal based upon lack of personal involvement. All defendants move to dismiss damages claims that occurred after February 1, 2009, the date that the MDOC prohibited tobacco products in the prison. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant Caruso argues that she is entitled to qualified immunity because she did not have enough personal involvement in the subject matter of the complaint. Defendant Caruso argues that plaintiff's three grievances against her, their three minute long conversation, and the emails sent to her by plaintiff's wife were insufficient to expose her to personal liability on plaintiff's claims. Defendant Caruso further claims that she is entitled to qualified immunity because the law was unclear prior to 2009, whether she could be liable for the acts of her subordinates.

Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard

to sequence. *Id*. As previously discussed, because plaintiff cannot establish that his constitutional rights were violated, defendants are entitled to qualified immunity.

Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959

(6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Defendant Caruso argues that she cannot be liable in this case because she did not have enough personal involvement. Plaintiff filed three grievances against defendant Caruso, which alone could not establish personal involvement. However, it is undisputed that plaintiff spoke for approximately three minutes with defendant Caruso concerning his Special Accommodation Notice for a smoke free environment that was being ignored by prison staff. Defendant Caruso argues that a three minute conversation is not enough involvement to impose liability. Plaintiff also has indicated that his wife had email contact with defendant Caruso about plaintiff's ETS exposure. In the opinion of the undersigned, whether defendant Caruso can be liable for plaintiff's ETS exposure is a question of fact. It should be the jury's decision to determine whether, under the facts of this case, defendant Caruso could be liable for plaintiff's ETS exposure.

Defendants argue that plaintiff should not be able to recover damages after February 1, 2009, when the MDOC became smoke free, because plaintiff has not established that he has an increased level of medical risk from his prior ETS exposure. Defendants argue that damages cannot be based on mere speculation and conjecture. Defendants point to *Henderson v.*

*Sheahan*, 196 F.3d 839 (7th Cir. 1999). In *Henderson*, there was a claim of future health damages as a result of a pre-trial detainee's ETS exposure. Applying Illinois law, the Seventh Circuit upheld the district court dismissal of plaintiff's future damages claim, explaining:

> Therefore, to withstand summary judgment in the present case, Henderson had to proffer competent and reliable expert medical testimony that there was a reasonable medical certainty that he himself faces some defined level of increased risk of developing a serious medical condition and that this increased risk was proximately caused by his exposure to second-hand smoke while detained at the Cook County jail. Henderson's proffer failed to meet this burden. The only evidence in the record that Henderson points to as support for his claim that exposure to second-hand smoke caused him to suffer an increased risk of incurring a serious future injury is Dr. Klein's testimony by affidavit that exposure to excessive levels of second-hand smoke leads to a twenty percent increase in the risk of atherosclerosis-a medical condition in which the walls of the arteries are thickened by the deposit of plaques. Dr. Klein attested that this progressive narrowing of the blood passages leads in many cases to strokes, heart attacks, or other adverse consequences. Having pointed to no other relevant evidence in the record to support his opposition to the Defendants' motion for summary judgment, Henderson's challenge on appeal rests on the weight of Dr. Klein's testimony alone.
>
> While Dr. Klein did testify that gross exposure to excessive levels of second-hand smoke leads to a twenty percent increase in the risk of developing atherosclerosis as a general proposition, he also conceded that he "cannot say to a reasonable degree of medical certainty whether a particular person exposed to ETS who is not exhibiting adverse health consequences will develop a smoking-related disease. There are too many variables." Dr. Klein's opinion mirrored the testimony of the Defendants' expert, Dr. Brian Samuels, Director of Clinical Research at Lutheran General Hospital's Hematology and Oncology Department, who attested that "it cannot be determined within a reasonable degree of medical certainty that a person . . . will contract any specific physical ailment as a result of the ETS exposure." Moreover, as the district court noted, testimony from both experts suggested that even if a particular individual such as Henderson was to develop a disease or disorder some time in the future of a kind statistically associated with persons exposed to second-hand smoke, it would be virtually impossible to determine

> whether second-hand smoke exposure or some genetic, environmental, or other factor was the cause of the disorder in that particular individual.
>
> Notwithstanding Dr. Klein's concession, Henderson argues on appeal that Dr. Klein's testimony was indistinguishable from the testimony accepted by the court in *Anderson*, and, therefore, the district court should have found that Dr. Klein's testimony was sufficient to raise a genuine issue of material fact. Henderson misconstrues the nature of proof offered by the plaintiff in *Anderson* in support of her future injury claim. A careful examination of *Anderson* clearly shows that the proffered expert in that case was prepared to testify to a reasonable degree of medical certainty that the plaintiff faced a defined risk of future injury as a result of the defendant's actions in that case.

*Id.* at 852-853.

Similarly in *Davis v. Bell*, No. 1:06-cv-690 (W.D. Mich. filed Jan. 16, 2009) (Order Adopting Report and Recommendation), this Court dismissed a claim of future damages for ETS exposure because the plaintiff had no evidence to support the claim.

> Plaintiff contends that the magistrate judge erred in granting Defendants summary judgment on the claim for future damages. In his Objection, Plaintiff contends that the magistrate judge should not have recommended dismissal of his claim for future damages because, although he has not identified an expert witness, he has produced materials supporting his claim for future damages. These include a report from the Surgeon General regarding the effects of secondhand smoke and Plaintiff's medical records. Plaintiff also points out that Howard Tyree, a physician's assistant who examined Plaintiff on or about April 19, 2006, concluded that Plaintiff's exposure to cigarette smoke triggered a bronchospasm that resulted a syncopal episode. Plaintiff's counsel explains in Plaintiff's motion for clarification of the report and recommendation that Plaintiff is simply seeking future compensatory damages for being subjected to ETS in the prison facility during April and May 2006, which resulted in Plaintiff being treated for asthma symptoms on several occasions. He states that Plaintiff is not seeking damages for future injuries, such as the possibility of being diagnosed with cancer at some time in the future, but only damages resulting from the injury in April and May 2006. In this regard, Plaintiff points out that since the period of time

> he was exposed to ETS, he has been on various medications to treat his asthma, and it appears that he will be required to remain on medication and use inhalers for the rest of his life.

*Id.* at 2-3 (footnote omitted).

Plaintiff asserts that Jamie L. Repace, an expert in ETS exposure, who testified in *Reilly v. Grayson*, 157 F.Supp.2d 762, 766 (E.D. Mich. 2001), will testify in this case. Jamie Repace is prepared to testify that plaintiff King has suffered permanent harm from his exposure to ETS because there is an implication of an "elevated mortality risk for passive smoking." Plaintiff's treating physician indicated to plaintiff that second-hand tobacco smoke affects all patients. Plaintiff also indicates that he had a special accommodation to be free from ETS.

Plaintiff must present evidence that his exposure to ETS will cause future medical problems. Speculation and conjuncture is not enough to support plaintiff's claim of future damages. Jamie L. Repace has only made a general statement that plaintiff might suffer future injury because second-hand tobacco smoke is bad for everyone. Plaintiff's treating physician has made a similar statement. To recover future damages, plaintiff must present specific evidence that establishes that plaintiff will personally suffer harm in the future due to ETS exposure. In the opinion of the undersigned, plaintiff's failure to present such evidence at trial should result in dismissal of plaintiff's claim for future damages.

Accordingly, it is recommended that defendants' Motion for Summary Judgment (Docket #144) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
        TIMOTHY P. GREELEY
        UNITED STATES MAGISTRATE JUDGE

Dated:   August 17, 2011